UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 7 |
| ALEXANDER E. JONES | § § | Case No. 22-33553 (CML) |
| Debtor. | § § § | |
| CHRISTOPHER R. MURRAY, CHAPTER 7 TRUSTEE<br>Plaintiff, | § § § § | Adv. No. 25-03419 |
| v. | § § | |
| AEJ AUSTIN HOLDINGS, LLC, AEJ 2018 TRUST, THE MISSOURI779384 TRUST, ALEXANDER E. JONES, DAVID JONES, PLJR HOLDINGS, LLC, JLJR HOLDINGS, LLC AND PQPR HOLDINGS LIMITED, LLC<br>Defendants. | § § § § § § § § | |

**ALEXANDER E. JONES RESPONSE, ANSWER, AFFIRMATIVE DEFENSES, AND SPECIFIC DENIALS SUBJECT THERETO**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Alexander E. Jones, Trustee[1] ("Jones-Trustee") as the Trustee or Co-Trustee of Defendants The Missouri779384 Trust (the "Missouri Trust"), AEJ Austin Holdings, LLC, ("AEJ Holdings"); AEJ 2018 Trust ("2018 Trust"), PLJR Holdings, LLC ("PLJR Holdings") JLJR Holdings, LLC ("JLJR Holdings") and PQPR Holdings Limited, LLC ("PQPR Holdings") files this Response, Answer, Affirmative Defenses, and Specific Denials subject thereto, to the

---

[1] Although Alexander E. Jones is referred to in the Complaint as "Alex Jones" or the "Debtor, "in the description of "Parties" at ¶ 7 it is clear that Alex Jones is only sued in his capacity as Co-Trustee of the AEJ 2018 Trust (the "Trust") and not individually or personally.

Page 1 of 17

Complaint [Docket #1] filed by Christopher R. Murray (the "Chapter 7Trustee"), and in support thereof would show and answer as follows:

## I.
## PRELIMINARY STATEMENT IN RESPONSE

**A.     The Chapter 7 Trustee**

1.     This new Trustee-Adversary ("Adv-03419") was filed by the Chapter 7 Trustee Christopher R. Murray, seeking judgments and recoveries against entities that have little to no (or negative) value.  Instead of pursuit of multimillion dollar claims owed to the estate from highly solvent entities or pursuing an auction of the Estates assets subject to a cash bid of $8 million, this Trustee has proceeded "scorched earth" against Jones, arm-in-arm with the Connecticut Plaintiffs in their lawfare pursuit of acquiring the Jones and FSS assets *so that they may be destroyed and thereby destroy the Jones and Infowars brand for their political anti-gun agenda*.  The Connecticut Plaintiffs, as the 800-pound gorilla in the room, has directed the Trustee in:

   a.     All of the initial auction actions wholly rejected by this Court;

   b.     A second planned auction that the Trustee represented to this Court required first the Trustee's support of a "settlement agreement" between the Estate, the Connecticut Plaintiffs and the Texas Plaintiffs providing allowing of clams at ten-times their judgment amount, among many terms designed to damage Jones and the pending appeals (which all during that time had an un-responded-to cash bid of $8 million for the assets) which this Court likewise wholly rejected;

   c.     Seeking payment, and paying over *$2.5 million is legal fees to the Trustee's own law firm and to his other "outside" counsel*, primarily for these work and charges of the failed efforts of the Trustee's to effectively do the bidding of the Connecticut Plaintiffs; and

    d.  Now, the new position that *the Trustee and Connecticut Plaintiffs* do not want a Bankruptcy Controlled auction of the Jones/FSS assets conducted in bankruptcy court but demand a sale by State Court Turnover Order that allows the Connecticut Plaintiffs to purchase by credit bid from a Sheriffs sale or other non-bankruptcy sale for a nominal price.  Because the assets are being acquired for destruction, they have little value to the Connecticut Plaintiffs who were unwilling in the bankruptcy court auction process to match any meaningful bid made by both FUAC, LLC and then On-Media, LLC.

    e.  The Connecticut and Texas Plaintiffs have filed a new 2025 Turnover and Receivership action, notwithstanding that the Supplemental Order and assets remain in the exclusive jurisdiction of the Alex Jones Chapter 7 Estate.  In this "new" August 13, 2025 turnover action hearing,  Alex Jones counsel were not permitted to participate as the Court announced the hearing was *ex parte* with only the Texas and Connecticut Plaintiffs allowed to speak before the Court entered, for the second time, a New Turnover and Receivership Order.[2]  This New Turnover and Receivership will be appealed to the Austin Court of Appeals as an independent final order under *Black v. Shor*, 443 S.W.3d 170, 176 (Tex. App.—Corpus Christi 2013, no pet.).  But this Court should know that this turnover order actively interferes with assets under bankruptcy control, and in violation of the automatic bankruptcy stay—one of the grounds of reversal of a similar turnover order in *Black v. Shor*.  The turnover order requires turnover of assets from FSS that are part of the bankruptcy estate only on the approval of the Trustee (ignoring, as usual, the orders of this

---

[2] After the Order was entered, and after the Texas Plaintiffs presented a power point seeking sanctions against Alex Jones claiming that this Court has "voided" the Supplemental Order and Alex Jones counsel were lying to the Court about the bankruptcy court's jurisdiction over the FSS assets, the Court allowed Alex Jones counsel to speak but not to argue anything concerning the voiding of the Supplemental Order, or the entry of the New Turnover and Receivership Order.

Court, the Bankruptcy Rules and the Bankruptcy Code:

> **The Court also FINDS that** Judgment Debtor Free Speech Systems, LLC filed for bankruptcy under chapter 11 of the Bankruptcy Code on July 29, 2022 (the FSS Petition Date) in the Bankruptcy Court as case no. 22-60043 (the FSS Bankruptcy Case). Following a hearing on June 14, 2024, the Bankruptcy Court issued two orders in the FFS Bankruptcy Case dismissing the FFS Bankruptcy Case and vesting authority in the Trustee to take control of Judgment Debtor Free Speech Systems, LLC, including its assets and bank accounts. *See* Dkt. 956 (June 21, 2024) and Dkt. 1021 (September 25, 2024), No. 22-60043 (Bankr. S.D. Tex.). Accordingly, the Application only seeks relief relating to the following (cumulatively, the Turnover Property):
>
> (i) as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only to approval of the Trustee).

The Connecticut Plaintiffs are aware, however, that these assets are part of the bankruptcy estate, even referencing the Court's Order, the relevant part which is reflected below—

> **ORDER SUPPLEMENTING ORDER DISMISSING CASE**
> [Related to Docket No. 956]
>
> 1. Effective as of the entry of the Order Dismissing Case [Docket No. 956] (the "Dismissal Order"), pursuant to Section 349(b), all property of the estate of Debtor Free Speech Systems, LLC ("FSS") shall be deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541 and shall be under the control of the trustee of such estate ("Chapter 7 Trustee").
>
> 2. The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.
>
> Signed: September 25, 2024
>
> Christopher Lopez
> United States Bankruptcy Judge

After being made aware of this possible lack of jurisdiction over the FSS assets and

violation of the bankruptcy stay, the Texas Judge nevertheless entered the Turnover and Receivership order at the urging of the Connecticut Plaintiffs.

      f.     Counsel for the Texas Plaintiffs, in connection with threatening to sanction of Alex Jones and his counsel, falsely claimed that the order vesting FSS assets as part of the bankruptcy estate of Alex Jones *had been set aside and voided by this Bankruptcy Court*. As this Bankruptcy Court is aware as it acknowledged that it had no jurisdiction to set aside that order while on appeal by the Texas Plaintiffs. Initially, at the hearing on February 5, 2025 the Court referenced the loss of jurisdiction due to a pending appeal by the Texas Plaintiffs themselves of the Supplemental Order. However, those same lawyers that attended multiple hearing before this Court in which this Court stated that it had no jurisdiction to set aside or void an order on appeal, quoted *to the state court this Court's earlier comments in the February 5, 202, hearing on voiding the Supplemental Order*, but did not read or reference the below quote of this Bankruptcy Court. Instead, the Texas Plaintiffs asked the state court for an award of sanctions against Alex Jones and counsel for "lying" about the Supplement Order not being voided by the Court. The quote from February 5, 2025, <u>not shown to the state court</u> is as follows:

    15.    …    -- no, I should back up and mention that the
    16.    supplemental order was appealed by the Texas families. I
    17.    think that matter is still pending.
    18.    MR. JORDAN: It is, Judge.
    19    THE COURT: *I lose jurisdiction over that immediately*.
    20.    MR. JORDAN: It's still -- it is still pending.

[*See*, February 5, 225 Transcript Judge Lopez, pg. 8-9 (Emphasis Added)]. Thus, after only quoting this Court's prior oral comments on February 5, 2025, that the Supplement Order could be vacated, the Texas Plaintiffs told the Court that Alex Jones counsel lied to the state

Page 5 of 17

court *because the order was voided by this Court*. Even more remarkable, not only did the Texas Plaintiffs not tell the state court of the above quote, but also failed to apprise the state court of other occasions this Bankruptcy Court made the same observations that the Supplemental Order could not be vacated; first, because of the Texas Plaintiffs' appeal (*See, below* quote June 5,2025):

```
 5          The matter was currently pending.  That order was
 6     currently pending on appeal at the time, so I couldn't revoke
 7     one way or the other, right?  Once bankruptcy, once an appeal
 8     is filed, the Court loses jurisdiction over that.  What I
 9     intended to say and certainly communicate to the parties is
10     conducting -- well, I can't, I'm not going to force the trustee
11     to put up another sale, put on auction.  The trustee can
```

*See* June 5, 2025 Transcript, p. 40. And second, when the Texas Plaintiffs dismissed their appeal as a result, the bankruptcy court order remains in effect, and these act violate the automatic bankruptcy stay.

      g.      After insisting that an emergency mediation be conducted over the PQPR lien against the FSS assets supporting $52 million debt owed by FSS to PQPR because the second auction had to clear title to the FSS assets, settled the lien claim of PQPR for approximately $375,000 and then, shortly after the mediation, the Trustee alleged that the lien (purported to have been acquired by the Jones Estate by assignment) is valued and enforceable *in the amount of $6 million*;

      h.      Finally, continuing the Trustee's campaign against Jones by filing this Adv-03419, against entities the Trustee knows have little to no assets, but will involve complex

factual and legal work permitting more legal fees to the Trustee and outside counsel, notwithstanding the lack of any meaningful recovery.

i. As importantly, the first rejected auction not only cost approximately $800,000 in legal and professional fees, but by the deliberate acts of the Trustee to not only announce a bid acceptance without court approval (and by a method and manner unknown to the bankruptcy sale process by utilizing a formula of percentage "credit bidding" against a non-final judgment as if equivalent to compete with all cash bids) followed by the intentional shutting down and forcing the operating assets the Chapter 7 Estate of Jones owned and controlled to go dark *while The Alex Jones Show was on-air* operating as this Court's order allowed, followed by the chosen winner, The Onion,[3] going public that not only was it the winning bidder, but that it had no intention other than to destroy the Infowars and Alex Jones brand by their purchase for of the assets to use as a parody.

j. Jones had complained in prior pleadings seeking a fair and bankruptcy court-controlled auction of the assets that would allow *at least the opportunity* to have bidders interested in continuing the going concern value of the Alex Jones and Infowars brand and the 40+ employees and their jobs and avoid the attempted destruction of those brands by acquiring and destroying the asset values. Jones has argued that enforcing a claim in bankruptcy not for payment of the debt but for the ability to control the bankruptcy

---

[3] On information and belief, the Onion is an affiliated entity of the large anti-gun non-profit (Everytown for Gun Safety, an advocacy group focused on gun-safety measures ) funded in principal by Bloomberg. As announced by the Onion, it entered a bid to purchase Alex Jones's Infowars, aiming to transform it into a satirical news platform parodying alt-media, according to The New York Times. The Onion's bid was supported by the several families of victims of the Sandy Hook and the FBI agent responding to the shooting, whom Jones was alleged to have defamed. Everytown for Gun Safety is backed by Michael Bloomberg, and Bloomberg Law is operated by entities controlled by him. Everytown also planned to work with The Onion and had signed a multi-year advertising agreement for the relaunch of the website, according to a press release. https://www.theeditors.com/p/mike-bloomberg-lurks-behind-onions-takeover-of-infowars-alex-jones

and further a political agenda *to destroy the debtor and his ability to earn an income*, particularly as media speech protected by the First Amendment to the United States constitution, is abuse of process. Yet this announced goal of the Connecticut Plaintiffs – not the collection of a debt but to prevent a debtors right to exercise free speech media rights in the manner protected by the constitution. A bankruptcy auction will result in the protection of these rights no matter who purchases the assets for the highest price.

      k.      The Trustee, guided or instructed by the Connecticut Plaintiffs, simply refuses to support or even when allowed, conduct a bankruptcy auction of the FSS assets as mandated by the Bankruptcy Code and originally contemplated by this Court through the intent and purpose of the Initial and Supplemental Order vesting all assets in the Alex Jones Chapter 7 Estate. Through the influence and literal control of the Trustee's actions, the Connecticut Plaintiffs (joined in numerous respects by the Texas Plaintiffs) have intentionally stymied this Court's instructions of a prompt and efficient auction for one purpose. Because first two rejected efforts to acquire the FSS/Jones assets could not be arranged in such a fashion as to allow the Connecticut Plaintiffs and its partner The Onion to win the proposed bids, now the Connecticut Plaintiffs *oppose the trustworthy auction process under the Bankruptcy Code* and demand a right to go to state court for a turnover and receivership of the FSS Assets. In other words, their efforts to use Bankruptcy to further their political agenda by acquiring and destroying the Jones and Infowars brand having not worked, the Connecticut and Texas Plaintiffs seek another court to accomplish this improper and illegal result.

**B.      The Parties and their Relationships to Each Other**

2.     The Trustee's complaint deals with six (6) interrelated entities and the two Trustees of the Trust Defendants, Jones-Trustee and David Jones, the father of Alex Jones. The following demonstrative will aid the Court in understanding the parties' relationships:



\* Effectively AEJ 2018 Trust owns 72% interest in PQPR Holdings Limited LLC

3.     **AEJ 2018 Trust** (Alexander E Jones 2018 Trust) is a non-operating trust entity with $828.00 in cash assets and a note between PQPR and PLJR (that has no value as both entities have no meaningful assets).[4] The 2018 Trust owns 80% of PJLR, LLC (an entity with no current value

---

[4]    On information and belief, on or about January 1, 2024 the 2018 Trust had cash of approximately $10,000 of which $6,000 was disburse by its Trustee to Georgia Jones for education expenses, and $3,190 paid for preparation of tax returns.

but which owns 80% of PQPR holdings Limited, LLC that likewise has no value).

4. **AEJ Austin Holdings LLC** is a is a non-operating limited liability company with $325.00 cash on hand and no other assets.

5. **The Missouri779384 Trust** is a nonoperating trust-entity that held over $3.2 million on deposit in 2022 from the sale of Alex Jone's prior homestead, most all of which has been used by Jones to fund five bankruptcy proceedings (the initial three Chapter 11 cases dismissed when the Plaintiffs dismissed with prejudice all of their claims against these Debtors; the FSS Chapter 11 attorney's fees and finally Alex Jones initial attorneys fees deposits).  The last of the attorneys fees retainers was the transfer of $500,000 on November 4, 2022, from the Missouri Trust to David Jones who then immediately transferred that same amount to Alex Jones for attorney's fees retainer to file his Chapter 11 case.  The schedules disclose that on Alex Jones Chapter 11 conversion the cash consisted of $54,581 and no other assets other its ownership of AEJ Austin Holdings, LLC ("AEJ Holdings").

6. **PLJR Holdings** is owned by AEJ Austin Holdings and is a non-operating entity with no cash ($69.50) at conversion and owns only 80% of PQPR (having no value after having sold it lien to the Chapter 7 Estate for $375,000 (an asset the Chapter 7 Estate has a value of $6 million).

7. **JLJR Holdings** is a non-operating entity with no assets except 20% of PQPR and $17.13 in cash.

8. **PQPR** is now a non-operating entity winding down, with cash of $581.97.  PQPR has not sold inventory since June of 2024.  Its inventory of supplements have all expired, prohibiting the inventory from sale to the public pursuant to statute and federal regulations.  It is estimated that the cost of disposal of the expired inventory is $40,000.00 as hazardous material

because of it silver content.

9. The financial condition of these entities is well known to the Estate, most disclosed by the schedules and reports of both FSS and Alex Jones and could never result in a recovery sufficient to justify the costs.

10. Other than these Entity Defendants, no claims are asserted by the Chapter 7 Trustee. This adversary is an effort to subject defendants Alex Jones-trustee to legal and professional fees and related costs.

## II.
## AFFIRMATIVE DEFENSES

11. Jones Trustee and/or owner-Defendants assert the statute of limitations.

12. Jones Trustee and/or owner-Defendants assert laches.

13. Jones Trustee and/or owner-Defendants assert the statue of repose.

14. Jones Trustee and/or owner-Defendants assert waiver by conduct.

15. Jones Trustee and/or owner-Defendants assert estoppel and quasi-estoppel.

16. Jones Trustee and/or owner-Defendants assert abuse of process.

17. Jones Trustee and/or owner-Defendants assert the defense of ratification by all interested parties prior to any interests arising by creditors or Trustee.

18. Jones Trustee and/or owner-Defendants assert full or partial payment or accord and satisfaction.

19. Jones Trustee and/or owner-Defendants assert the defense of bona fide purchaser for value

20. Jones Trustee and/or owner-Defendants assert waiver by all interested parties prior to any interests arising by creditors or Trustee.

## III.
## SPECIFIC DENIALS

21. Jones Admits in ¶2 that PLJR Interests are held by AEJ 2018 Trust (the "Trust"). Jones denies any attempt to shield the Debtor's assets from the Debtor's creditors. Jones denies that transfers were without reasonably equivalent value. Jones denies that the transactions complained of were fraudulent transfer or that these transfers were part of a scheme through a web of persons to place Debtor's property beyond the reach of creditors. Jones denies that any transfers were for no real consideration and in an attempt to shield assets from creditors.

22. Jones Admits jurisdiction as set out in ¶3.

23. With respect to ¶4, Jones does not admit that all of the claims asserted, including the fraudulent transfer claims are "core" proceedings, and denies such, and asserts that such claims give rise to a right to a jury trial.

24. With respect to ¶5, Jones in his representative capacity, does not consent to the entry of a final order or judgment pursuant to Fed. R. Bankr. P. 7008 or Bankruptcy Local Rue 7008-1 and denies such.

25. With respect to ¶6, Jones agrees venue is proper in the Southern District of Texas (Houston Division).

26. Jones is not required to admit or deny ¶¶ 7 through 14 describing parties to this suit. Jones does generally admit the descriptive statements of the parties set out therein, and notes that the description of the parties is stated in a manner of limited capacity.

27. Jones admits in ¶ 15 that a mass shooting occurred at Sandy Hook Elementary School on December 14, 2012 but denies the remaining allegations.

28. Jones denies the allegations of ¶ 16 that there were any "targets" of defamation. Jones admits two suits were filed generally as described in ¶16.

29. Jones generally admits the allegations in ¶17 regarding the current status of the Texas Litigation, the Connecticut Litigation and that three Plaintiffs have not yet gone to trial, except that the appeal in the Texas Litigation appears likely to result in a reversal or most if not all of the damages in the judgment (with the Texas counsel notably stating in oral argument that the appeal was a "waste of time"), and that the Connecticut Litigation is subject to a petition for writ of certiorari to be filed in the United States Supreme Court Jones generally admits the listing of the six lawsuits.

30. Jones denies the allegation of ¶ 18, except that several affiliated companies were put into Chapter 11, three of which Plaintiff dismissed all claims with prejudice and one of which did file a Chapter 11 case but immediately consented to the jury trials.

31. Jones generally admits the allegations of ¶ 19.

32. Jones generally admits the allegations of ¶ 20.

33. Jones generally admits the allegations of ¶ 21, and that the bankruptcy court also entered its initial order vesting all cash accounts in the Alex Jones Chapter 7 Estate.

34. Jones generally admits the allegations of ¶22

35. Jones generally admits the allegations of ¶ 23.

36. Jones denies the allegations of ¶ 24 and states that well prior to the date referenced assets and cash were moved among family affiliated entities, as were assets of other entities not named, all in the ordinary course of this group of family-owned entities.

37. Jones denies the allegation of ¶ 25.

38. Jones generally admits the allegations of ¶ 26.

39. Jones generally admits the allegations of ¶ 27.

40. Jones generally admits the allegations of ¶ 28.

41. Jones is not required to admit or deny the legal conclusions set out in ¶ 29.

42. Jones generally admits the allegations of ¶ 30

43. Jones admits that the Trust made transfers but can neither admit or deny the allegations of ¶ 31 without a review of the transfers referenced or whether such transfers were a "substantial number" when compared to the operation of family-owned enterprises or trusts.

44. Jones is not required to admit or deny the legal conclusions set out in ¶ 32, but it is noted that ¶ 26 would reflect that the Trust is not self-settled, and the stated conclusion regarding self-settlement would be contrary to established Texas law and also contrary to established guidance for trust departments and groups in Texas law firms utilizing such trusts.

45. Jones generally admits the allegations of ¶ 33.

46. Jones generally admits the allegations of ¶ 34 but states that the purpose of the valuation included estate planning.

47. Jones denies the allegations of ¶ 35.

48. Jones generally admits the allegations of ¶ 36.

49. Jones generally admits the allegations of ¶ 37 except neither admits nor denies the legal conclusion of that paragraph.

50. Jones generally admits the allegations of ¶ 38 subject to verification of the records of the Secretary of State of Texas.

51. Jones generally admits the allegations of ¶ 39. Jones admits that the schedules do not assign a value to the Trust's interest in AEJ Holdings.

52. Jones generally admits the allegations of ¶ 40.

53. Jones generally admits the allegations of ¶ 41, except that transfers may not have been exclusively as described.

54.     Jones cannot admit or deny this accounting referenced in this ¶ 42 of the Complaint inasmuch as it is not tied to claims in this adversary, and in fact list transactions made the basis of the other Adversaries filed recently by the Chapter 7 Trustee. In any event Jones points out that none of these entities listed, including the Missouri Trusts, have no assets of any significant amount to justify litigation (as is well known to the Chapter 7 Trustee) and simply reflects intercorporate transfers by an among these and other FSS or Jones related entities.  As an example, the majority of the $500,000 Missouri Trust transaction was paid to attorneys for Alex Jones (the beneficiary of the Missouri Trust) for payment of his Chapter 11 attorneys retainer for his Chapter 11 case. These numbers are simply meaningless to demonstrate anything other than intercorporate transfers.

55.     Jones is not required to admit or deny the legal conclusions stated in ¶ 43.  Jones denies that allegations that the transfers represented diversion from the Debtors' estate or were made pursuant to sham transactions concocted to frustrate the collection efforts of the Debtor's creditors.  Jones alleges that many, if not most, of the transfers and transactions were for the benefit of the respective entities or the Debtor and Jones states that there was no plan, program, scheme or other arrangement designed to avoid creditors claims.  Although the numbers appear large, so also were the volumes of transactions of the primary money generating enterprises FSS and PQPR. As family and related transactions, none of the transfers were with any intent to avoid creditors' claims and most of these transactions resulted in the payments of legitimate claims, debts, costs of business operations, or legal fees.

56.     Jones denies that the transfers totaled and set out in ¶ 44 were actual or constructive fraudulent transfers notwithstanding the fact that Jones and his affiliates or related trusts were likely insiders to some or all of the various debtors (FSS, Jones, Info-W, *etc*.)

57. With respect to ¶ 45, this is a legal conclusion that requires no admission or denial.

58. With respect to the remainder of the allegations by the Trustee reflected in ¶46-¶187, these are legal claims that require no admission or denial. To the extent that one is required, the prior positions stated in ¶¶1-45 are incorporated herein, and the rest of the allegations are hereby denied, conditionally, is response is deemed required for these legal claims and conclusions.

WHEREFORE, Alex Jones-Trustee on behalf of each represented interest, prays of for an order and judgment of this Court that the Plaintiff-Chapter Trustee take nothing in their case, and for such other and further relief to which Jones-Trustee may be entitled, at law or in equity.

Dated: August 15, 2025

/s/ Shelby A. Jordan
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
ANTONIO ORTIZ
State Bar No. 24074839
S.D. No. 1127322
**Jordan & Ortiz, P.C.**
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
          aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**COUNSEL FOR ALEXANDER E. JONES AND RELATED TRUST**

Ben C. Broocks
State Bar No. 03058800
Federal Bar No. 94507
William A. Broocks
St. Bar No. 24107577
Federal Bar No. 3759653
BROOCKS LAW FIRM P.L.L.C.
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000

Fax: (512) 201-2032<br>
Email: bbroocks@broockslawfirm.com<br>
<b>CO-COUNSEL FOR ALEXANDER E. JONES<br>
AND RELATED TRUST</b>

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, a true and correct copy of the foregoing document was served via e-file/e-mail in accordance with the Texas Rules of Civil Procedure:

Alan Daughtry
3355 W. Alabama, Suite 444
Houston, Texas 77098
alan@alandaughtrylaw.com
**Counsel for David Jones as Trustee**

Joshua W. Wolfshohl
Michael B. Dearman
Jordan T. Stevens
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
jwolfshohl@porterhedges.com
mdearman@porterhedges.com
jstevens@porterhedges.com

and

Erin E. Jones
JONES MURRAY LLP
602 Sawyer Street, Suite 400
Houston, Texas 77007
erin@jonesmurray.com
**Counsel for Christopher R. Murray, Chapter 7 Trustee**

*/s/ Shelby A. Jordan*
Shelby A. Jordan